NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROBERT ORDNER, | : | |
| Plaintiff, | : | Civil Action No. 12-5037 (SRC) |
| v. | : | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff Robert Ordner ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision will be vacated and the case remanded.

In brief, this appeal arises from Plaintiff's application for disability insurance and supplemental security income benefits, alleging disability beginning January 1, 2006, due to heart damage, bipolar disorder, kidney problems, high blood pressure, and diabetes. A hearing was held before ALJ Joel H. Friedman (the "ALJ") on April 7, 2011, and the ALJ issued a decision on September 23, 2011, finding that Plaintiff was not disabled within the meaning of the Social Security Act. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

The ALJ, in short, found that, at step three, Plaintiff did not meet or equal any of the Listings, and that, at step four, he did not retain the residual functional capacity to perform his past relevant work. The ALJ found that Plaintiff retained the residual functional capacity to perform sedentary work that involves simple, routine jobs. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

Plaintiff appeals on several grounds, but this Court need reach only the argument for reversal that succeeds, that the Commissioner failed to properly evaluate the medical evidence as to Plaintiff's mental impairments.

Plaintiff contends that, at the fourth step, the ALJ's determination as to mental impairments limiting his residual functional capacity is not supported by substantial evidence. The ALJ discussed the medical evidence as to mental impairments at two points, step three and step four.

At step three, the ALJ reviewed the medical evidence and concluded that the claimant does not have an impairment or combination of impairments that meets or medically equals any of the Listings, a conclusion that Plaintiff does not contest. In arriving at this conclusion, the ALJ reviewed the medical evidence as to mental health[1] and found moderate difficulties in social functioning, as well as moderate difficulties with regard to concentration, persistence, or pace.

---

[1] Although this discussion of the mental health evidence appears in the decision at step three, the ALJ appears to have relied on these conclusions at the subsequent steps.

Based on the difficulties in social functioning, the ALJ concluded that Plaintiff "retains the ability to function adequately in a low contact setting, not requiring contact with the general public." (Tr. 18.)

Although the ALJ also found "moderate difficulties" with concentration, persistence, or pace, he concluded that Plaintiff "retains the ability to perform simple repetitive tasks." (Tr. 19.) This appeal turns on the issue of whether this determination, when used in the residual functional capacity analysis, is supported by substantial evidence. At step five, the vocational expert testified that, if Plaintiff were unable to maintain concentration, persistence, and pace on even a simple, routine job, there would not be sufficient jobs he would be capable of doing. (Tr. 26.)

At step three, the ALJ cited two pieces of evidence to support his determination that Plaintiff retained the ability to perform simple repetitive tasks: the evaluation by a state agency psychological consultant, and a psychiatrist's note from a single visit. As to the evaluation, the record contains a form filled out by Robert Eckardt, Ph.D. on April 7, 2010. (Tr. 1227-1243.) The ALJ stated: "My conclusion is consistent with the assessment of the state agency psychological consultants who opined that while the claimant was depressed, he retained the ability to understand, remember and execute simple instructions." (Tr. 19.) This is not untrue, because the narrative portion of Dr. Eckardt's report states that. (Tr. 1243.) The problem is that the ALJ focused on one sentence in that report and did not mention the other evidence in it. Dr. Eckardt stated that the Plaintiff "admitted to hearing voices." (Tr. 1243.) Dr. Eckardt gave Plaintiff a diagnosis of "major depression with psychotic features." (Tr. 1230.) Dr. Eckardt rated Plaintiff as having "moderately limited" ability in four areas: 1) the ability to maintain attention and concentration for extended periods; 2) the ability to perform within a schedule,

3

maintain regular attendance, and be punctual within customary tolerances; 3) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and 4) the ability to respond appropriately to changes in the work setting. (Tr. 1241-1242.)

This Court is unable to see how Dr. Eckardt's report can be read as supporting the conclusion that Plaintiff retains the residual functional capacity to perform work consisting of simple, repetitive tasks. Yes, Dr. Eckardt did write that Plaintiff could understand and execute simple instructions. But that was in the context of ratings stating that Plaintiff was moderately limited in the mental capacities necessary to execute simple instructions in the context of a normal workplace and a normal workday. These assessments are easily reconciled: Plaintiff can execute a few simple instructions when directed, within a short time frame, but has difficulty maintaining attention over a longer time frame – thus the limitation in "persistence." This Court is unable to understand how someone who is hearing voices, has a psychotic disorder, and is unable to complete a normal workday without interruptions from psychologically based symptoms, can be said to have the capacity to work at a regular job consisting even of simple, repetitive tasks. Dr. Eckardt's report does not provide evidence to support such a conclusion, since it states the contrary.

Second, the ALJ cites a single progress note written by Dr. S. Gorman on January 20, 2011. The ALJ states accurately that, in this note, Dr. Gorman wrote that Plaintiff had mild anxiety and depression, and no suicidal ideation or psychosis. (Tr. 1635.) How does this support the conclusion that Plaintiff has any particular limitation, or lack thereof, in his residual

functional capacity? This progress note contains no evidence of residual functional capacity. The ALJ does not mention that, in this note, Dr. Gorman also gives the patient a diagnosis of bipolar disorder, and prescribes, in addition to medication, group therapy three days each week. (Id.)

This Court has now reviewed the entirety of the evidence cited by the ALJ in support of his conclusion that Plaintiff retains the ability to work at a job involving simple, repetitive tasks. At step four, although the ALJ recited the details of a substantial history[2] of mental health problems and treatment, including multiple hospitalizations,[3] the ALJ only briefly discussed mental aspects of the residual functional capacity determination. The ALJ acknowledged that an April, 2010 evaluation by treating physician Dr. Shah stated that Plaintiff was "incapable of even 'low stress' jobs," but dismissed it. (Tr. 1438.) The ALJ explained his decision to give no weight to that opinion as follows: "This assessment is not supported by clinical findings and is inconsistent with the weight of the medical evidence and the credible testimony of Dr. Fechner, the impartial medical expert." (Tr. 24.) Yet the ALJ does not cite any particular clinical findings, medical evidence, or testimony from Dr. Fechner. Having read the ALJ's decision in its entirety, this Court finds no clinical findings or medical evidence that contradicts the opinion of Dr. Shah. To the contrary, as already discussed, the only other substantial evidence of record cited by the ALJ, the report of Dr. Eckardt, came to conclusions that are quite consistent with Dr.

---

[2] The ALJ reported some, but not all, information on psychiatric treatment in the medical record, which is lengthy. For example, the Department of Psychiatry of Trinitas Hospital documents approximately fifty appointments with Plaintiff during the period of June, 2010 through February, 2011 alone, which the ALJ did not mention. (Tr. 1628.)

[3] The ALJ reported that the records show five psychiatric hospitalizations within the period of March through July of 2007 alone. (Tr. 22.)

Shah's opinion.

Plaintiff points as well to the medical evidence showing "GAF" (Global Assessment of Functioning) scores reflective of serious impairments in multiple domains of functioning. In the opposition brief, the Commissioner contends – remarkably – that the GAF scores <u>support</u> the ALJ's assessment of Plaintiff's mental functioning. (Def.'s Opp. Br. 12.) The Commissioner's brief agrees that the higher GAF scores in the record reflect "moderate difficulty" in functioning. This Court is not persuaded that this evidence supports the ALJ's assessment of Plaintiff's mental functioning.

This Court finds that the ALJ's determination that Plaintiff retained the residual functional capacity to work at jobs involving simple, repetitive tasks is not supported by substantial evidence. Given what the ALJ cited in his decision, it appears to be supported by no evidence. In fact, all the evidence the ALJ points to contradicts his conclusion on this point.

The Commissioner's opposition brief largely just repeats the ALJ's reasoning. The Commissioner does note that a second state agency psychologist, Dr. Joynson, subsequently reviewed Dr. Eckardt's report and affirmed his assessment. (Def.'s Opp. Br. at 10.) Given that this Court has determined that Dr. Eckardt's evaluation contradicts the ALJ's determination, the fact that a second psychologist agreed does not help the Commissioner's case. The opposition brief also states, incorrectly, that the ALJ determined that Plaintiff's mental problems "were largely due to his use of marijuana, cocaine, and other narcotics." (Def.'s Opp. Br. at 11.) The ALJ made no such determination, nor even a suggestion to this effect.

This Court concludes that the Commissioner's decision is not supported by substantial evidence, and that decision is vacated. This case is remanded to the

Commissioner for further proceedings in accordance with this Opinion.

                                            s/ Stanley R. Chesler
                                      STANLEY R. CHESLER, U.S.D.J.

Dated: August 9, 2013